```
                     DISTRICT COURT OF THE VIRGIN ISLANDS
                       DIVISION OF ST. THOMAS AND ST. JOHN

DALE SUKOW as personal            )
representative for the ESTATE OF  )
MARCUS SUKOW,                     )
                                  )
            Plaintiff,            )
                                  )     Civil No. 2010-102
            v.                    )
                                  )
WILLIAM G. CLARK and the UNITED   )
STATES OF AMERICA,                )
                                  )
            Defendants.           )
                                  )
```

ATTORNEYS:

**Rachel E. Morrison, Esq.**
Morrison Law Offices
**Vincent A. Collianni, II, Esq.**
Colianni & Colianni
St. Croix, VI
    *For the plaintiff,*

**Glenn S. Greene, Esq.**
United States Department of Justice
Washington, DC
    *For the defendants.*


<u>**MEMORANDUM OPINION**</u>

**GÓMEZ, J.**

Before the Court is the complaint of Dale Sukow, as the representative of the estate of Marcus Sukow ("Sukow"). Sukow seeks a money judgment against the United States pursuant to the Federal Tort Claims Act.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

Defendant William G. Clark ("Clark") was a special agent of the Federal Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") stationed on St. Thomas, United States Virgin Islands. In 2008, Clark moved into condominium unit 57 "lower" in the Mahogany Run condominium complex. Marcus Sukow ("Sukow") and Marguerite Duncan ("Duncan") resided in unit 57 "middle." Clark testified that between April 2008, when he moved into his condominium, and September 2008, he observed three arguments or conflicts between Sukow and Duncan.

On September 7, 2008, Clark left his condo intending to go to the gym. He carried a gym bag with him. Clark had his ATF-issued firearm in his bag. Clark's car was parked directly across the road from Sukow and Duncan's condo. Clark saw Duncan inside the carport on the driver side of her sport utility vehicle ("SUV"). He testified that Duncan was shaking and crying. Sukow was across the carport, on the other side of Duncan's SUV. He was pounding on the vehicle with his fists and shouting. Sukow damaged Duncan's car; the damage included a smashed side view mirror. When Duncan saw Clark, she asked Clark for help.

When Sukow saw Clark, he stopped pounding on the SUV and went into the house. As he went inside, Clark heard Sukow say,

"Bitch, you want a piece of me?" (Trial Tr., Sept. 11, 2012, 131:5.) Clark testified that Sukow was completely naked, and that based on Clark's experience he believed that Sukow was likely drunk and probably under the influence of drugs.

Clark put his gym bag inside his car. By the time Clark had locked the bag inside his car, Sukow had returned dressed in a pair of shorts. Clark spoke with Sukow. Clark testified that he asked Sukow if everything was okay, and that Sukow responded by saying, "No, I've got a gun in the house. I'm gonna go get it and blow this bitch's head off[.]" (*Id.* 135:15-17.) Clark testified that he believed Sukow was serious in this threat.

Clark advised Duncan to get into her car and leave. In response, Clark testified, Sukow said, "[Duncan's] not going anywhere." Sukow also told Clark that Clark was "a big boy, but I'm going to give you a country asskicking." Sukow went towards the carport, picking up some large rocks, and hurled those rocks at Duncan's car. Duncan got into her car. Clark entered his own car, but did not leave the complex. Clark testified that his car was blocked in by another vehicle.

Duncan backed out of the carport, and began to maneuver so she could drive away. Sukow went to his own car, and retrieved a black, heavy metal flashlight. Duncan began to drive towards the main street. Sukow walked into the street, blocking Duncan's

car. Due to the narrowness of the road, Duncan could not drive around Sukow. Sukow then began pounding on the hood of Duncan's car with the flashlight, leaving large dents. While Sukow was hitting the hood of Duncan's car, he was yelling. Clark opened his door, and partially exited his car so he could better assess the situation.

Duncan reversed her car back into the carport. While she did so, Roylando Smith ("Smith"), a Mahogany Run security officer, arrived in a security vehicle. Smith radioed a supervisor to ask what he should do. Another neighbor, Henry Carr ("Carr"), came outside. Carr asked Duncan if she needed any help. Sukow then confronted Carr, using "some name calling, some obscenities." (Trial Tr., Sept. 10, 2012, 127:2-3.) Sukow had the flashlight in his hand. Carr backed up to keep a distance between himself and Sukow. Sukow chased after Carr for a short distance, yelling. Carr testified that he did not feel he was in imminent danger of death or serious injury.

While Sukow confronted Carr, Duncan got into the passenger seat in Clark's car. Sukow turned away from Carr and Smith, back towards Clark's car. Sukow moved towards Clark's car with the flashlight in his hand. Clark testified that the flashlight was raised and that Sukow stepped closer and tried to hit Clark in the head with the flashlight. Clark testified that he believed

Sukow intended to kill him or cause him serious injury with the flashlight.

While Sukow was moving towards him, Clark fully exited the vehicle with his firearm. Clark testified that Sukow was swinging the Maglite at Clark. Smith testified that when Sukow saw the firearm, he stopped moving and dropped his arms to his sides. A forensic pathologist, Dr. Jonathon Arden, testified that Sukow's arm remained raised. Clark fired five shots at Sukow. Sukow collapsed thereafter. Clark administered first aid until an ambulance arrived. Sukow was taken to a hospital, where he later died of his injuries.

A complaint in this matter was first filed on September 7, 2010. The complaint was subsequently amended twice, on February 24, 2011, and September 5, 2012. The September 5, 2012, complaint alleged causes of action under the Federal Tort Claims Act and *Bivens*. The plaintiffs seek compensatory damages, punitive damages, costs, and attorney's fees.

Jury trial began on the *Bivens* action on September 10, 2012. Thereafter, on September 13, 2012, the jury returned a verdict in favor of Clark. The jury found that Clark had not deprived Sukow of his right to be free from excessive force and that Clark's use of force was not the proximate cause of Sukow's injuries.

*Sukow et al. v. Clark et al.*
Civil No. 2010-102
Memo Op.
Page 6

Both parties have since filed their proposed findings of fact and conclusions of law as to the Federal Tort Claims Act cause of action.

## II.   DISCUSSION

"Under the [Federal Tort Claims Act ("FTCA")], the United States waives sovereign immunity for torts involving personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government, while acting within the scope of his office or employment." *Fabend v. Rosewood Hotels & Resorts, L.L.C.*, 174 F. Supp. 2d 356, 358 (D.V.I. 2001)(citing to 28 U.S.C. § 1346(b)). Generally, the FTCA does not waive sovereign immunity for intentional torts committed by its employees. 28 U.S.C. § 2680(h). However, the United States may be liable under the FTCA where the alleged tort is assault, battery, false imprisonment, or false arrest committed by a law enforcement officer acting in the scope of his or her employment. 28 U.S.C. § 2680(h). The United States may be liable only where the United States would be liable if a private litigant in its place would be liable if the alleged tort occurred. *See* 28 U.S.C. § 1346(b)

## III. ANALYSIS

### A. Scope of Employment under the FTCA

A threshold requirement of the FTCA is that the Federal employee must have been acting within the scope of employment when the alleged tort occurred. *See Guitierrez de Martinez v. Lamagno*, 515 U.S. 417, 423 (1995). The United States is liable for injury to the same extent a private employer would be liable. *See McSwain v. United States*, 422 F.2d 1086, 1088 (3d Cir. 1970). That is, the United States' liability is determined by the law of *respondeat superior*. *See id.* Scope of employment and *respondeat superior* questions are governed by the law of the state where the alleged tort occurred. *Id*.

In the Virgin Islands, an employer is subject to liability for the torts of an employee where the employee is acting within the scope of his or her employment. *See Chase v. V.I. Port Auth.*, 38 V.I. 417, 3 F. Supp. 2d 641, 642 (D.V.I. 1998). An employee is acting within the scope of her employment only if: (1) it is the kind of conduct she is employed to perform; (2) the conduct occurs substantially within the authorized time and space limits; (3) the conduct is actuated, at least in part, by a purpose to serve the employer; and (4) if force is intentionally used by the employee against a third party, the use of force is not unexpectable by the employer. *Id.*

Here, Clark was employed by the United States as a federal law enforcement officer under the auspices of the ATF. In that capacity, Clark was tasked with enforcing federal law. No federal law was at issue in the conflict that occurred here. That said, the United States concedes that Clark was trained to use force where he perceived a threat of death or serious bodily injury to himself or another person. Furthermore, ATF policy allows its special agents to intervene in exigent state offenses. In that sense, the conduct complained of here was within the scope of the conduct Clark was employed to perform. Thus, this conduct satisfies the first element. *See id*.

Clark was on duty around the clock, even when not officially working. His duty station was the district of the Virgin Islands, in which Mahogany Run is located. As such, it appears Clark was within the time and space limits of his employment and satisfies the second element. *See Chase*, 3 F. Supp. 2d at 642.

It is not entirely clear how intervening in a domestic dispute furthers the aims of the ATF, the agency by which Clark was employed. In the broader sense, however, the intervention of a law enforcement agent in a severe altercation may further the interests of the United States more generally. Furthermore, the ATF's policy of allowing special agent intervention in

exigent state offenses indicates that such intervention "serves" the employer. As such, the third element is met. *See id*.

Finally, Clark admits that he intentionally used force. As Clark is a law enforcement agent, the Court does not find that such use of force is "unexpectable by the employer," the United States. Thus, Clark also satisfies the fourth element. *See id*.

The Court notes that neither party disputes that Clark was acting within the scope of his employment when the altercation took place. Additionally, the four elements for *respondeat superior* liability in the Virgin Islands are satisfied in this situation. *See id*. The Court's inquiry is not concluded, however. Even when the offensive conduct occurs within the scope of the defendant's employment, the United States may only be held liable to the extent a private entity could be held liable for the intentional torts of assault, battery, false imprisonment, or false arrest. 28 U.S.C. §§ 1346, 2680(h).

**B. Virgin Islands Battery**

"A defendant is liable for battery if he acts with an intent to commit harmful or offensive contact with another, or imminent apprehension of such contact, and the offensive contact with the other directly or indirectly results." *Canonier v. Mahogany Run Condo. Assoc.*, Inc., 54 V.I. 210, 2011 WL 635295, at *4 (Super. Ct. 2011). That contact alone is not dispositive.

Indeed, liability may be avoided if there is a valid defense to the charged conduct. The same defenses apply in civil battery claims as would apply to criminal assault and battery. *Gov't of the V.I. v. Stull*, 6 V.I. 347, 280 F. Supp. 460, 462 (D.V.I. 1968). Thus, violence is lawful, that is it does not constitute assault and battery, where it occurs "in self defense or in defense of another against unlawful violence offered to his person or property." V.I. CODE ANN. tit. 14, § 293. Violence in self-defense or defense of another is only lawful to that degree of force which is necessary to effect such purpose. *Id.* The Virgin Islands Code also allows for use of force when a "person is resisting an attempt by another to kill him or to inflict serious bodily injury upon him." V.I. CODE ANN. tit. 14, § 44(a)(1).

In determining whether a person is justified in the use of force, the Court shall consider all relevant circumstances, including: (1) time of day; (2) location; (3) visibility conditions; (4) type of weapon, object or instrument; and (5) brandishing of a firearm or other dangerous or deadly weapon. V.I. CODE ANN. tit. 14, § 44(b).  The Virgin Islands Code does not exhaustively list every potential dangerous or deadly weapon. *See, e.g.*, V.I. CODE ANN. tit. 14, § 2251 (listing possible dangerous or deadly weapons and concluding with "any other

dangerous or deadly weapon"). Items that may be dangerous or deadly weapons include: billies, bludgeons, blackjacks, and two-by-fours. *See id*. (listing billies, bludgeons, and blackjacks); *Gov't of the V.I. v. Robinson*, 29 F.3d 878, 885 (3d Cir. 1994) (finding that a two-by-four could be a dangerous or deadly weaon as used with violence it could result in the infliction of serious injury).

In the instant matter, it is uncontested that Clark intentionally committed a harmful contact with another's person. Clark's testimony bears this out. The issue is thus whether this contact was privileged as self-defense, or was tortious battery, such that the United States would be liable.

The first factor that the Court must consider is the time of day. Here, the record indicates that the incident occurred in mid- or late-morning.

The Court next considers the location of the incident. The incident that gave rise to this case occurred in the carports and road near Unit 57 at Mahogany Run. The road is described as being a narrow cul-de-sac. It has a dead-end at one end. Clark testified that he could not have driven around Sukow from his car's location. It is unclear that this was the case, as that claim is disputed by the plaintiff. However, what is conceded by both parties is that Duncan could not have driven away from

*Sukow et al. v. Clark et al.*
Civil No. 2010-102
Memo Op.
Page 12

the scene. Due to where Sukow had placed himself, and the geography of the location, she was essentially trapped in the Mahogany Run complex.

The third factor that the Court considers is visibility at the time of the incident. Nothing on the record indicates that visibility was particularly impaired at the time. It was morning, not the dark of night, and there does not appear to have been weather that would have impeded any person's view.

The fourth factor that the Court considers is the object, weapon, or instrument that the deceased was wielding. Clark and other witnesses testified that Sukow did not have a firearm at the time of this incident. All parties agree, and the record bears out, that Sukow held a large flashlight, or a "Maglite." The record indicates that the flashlight was approximately 18 inches long, made of steel, and contained batteries. In terms of its size and build, such a flashlight might be comparable to a billy club or a bludgeon of some kind. *Cf.* V.I. CODE ANN. tit. 14, § 2251.

The fifth factor that the Court considers is whether there was any brandishing of a firearm or some other dangerous or deadly weapon. As discussed just above, the deceased did not have a firearm. He held, instead, a large, metal flashlight.

Prior to being shot, Sukow used the flashlight forcibly in damaging Duncan's car and "chasing" Carr.

The Court notes that testimony on the issue of whether or not Sukow brandished the flashlight at Clark in a threatening manner was not uniform or uncontroverted. Indeed, Smith testified that Sukow stopped advancing on Clark when Clark raised his firearm. That said, Clark did testify that Sukow was actively swinging the Maglite, in essence a one-and-a-half foot steel pipe, at his head. That testimony was corroborated by a forensic pathologist, who stated that Sukow's arm was raised when he was shot. On balance, the Court finds that the weight of the evidence supports a finding that Sukow was brandishing the Maglite at the time he was shot by Clark.

Finally, the Court must consider the totality of the circumstances. Of particular note in this case is the intoxication, by alcohol or drugs or both, of the deceased. The Court also considers the statements and threats made by the deceased during the incident, including a threat to get a gun and shoot Duncan, chasing Carr with a Maglite, and telling Clark that he was going to injure him. The Court also takes into consideration the history of altercations that had been witnessed by Clark.

*Sukow et al. v. Clark et al.*
Civil No. 2010-102
Memo Op.
Page 14

Considering the totality of the circumstances – the enclosed location, the intoxication and increasing anger of the deceased, the deceased's possession of a blunt object that had already been used forcefully during the confrontation, the deceased's brandishing of a potentially deadly weapon, and the deceased's comments – and based upon the testimony on the record, the Court finds that Clark reasonably believed force was necessary to defend himself and Duncan from imminent serious injury or death. The Court also finds that the use of deadly force, although certainly regrettable, was reasonably proportionate where, as here, the deceased was armed with something amounting to a dangerous or deadly weapon and appeared to be advancing on Clark and Duncan. *Cf. Robinson*, 29 F.3d at 885 (finding that a violently wielded two-by-four piece of wood was a dangerous or deadly weapon).[1]

---

[1] Sukow instituted two actions in his complaint, a *Bivens* action against Clark and an action against the United States under the FTCA. In the *Bivens* action, Sukow was entitled to and received a jury trial.  The jury found that Clark did not use excessive force during the incident underlying this case. The Court is not bound by the jury's factual findings in the parallel case. *See, e.g.*, *Engle v. Mecke*, 24 F.3d 133, 135 (10th Cir. 1994)("Several courts have concluded that it would contravene the requirements of the FTCA and the conditions under which the United States has agreed to be held liable if a parallel jury determination were given binding effect in an FTCA action."); *see also City of Pittsburgh v. United States*, 359 F.2d 564, 568-69 (3d Cir. 1966)(holding that a state jury determination regarding facts central to an FTCA claim could not be given binding effect). As such, the Court will not consider the jury's findings in making its determination regarding whether Sukow was brandishing or wielding the flashlight in a threatening manner.

*Sukow et al. v. Clark et al.*
Civil No. 2010-102
Memo Op.
Page 15

## IV. CONCLUSION

To prevail under the FTCA, the plaintiff had to show that the employee was acting within the scope of his employment when the tort occurred. Further, the plaintiff had to show that the United States was liable under state tort law. Here, the facts and Virgin Islands law indicate that Clark, and thus the United States, was not liable for the tort of battery.

For the foregoing reasons, the Court finds in favor of the defendant. An appropriate judgment follows.

S\_____
**Curtis V. Gómez**
**District Judge**